IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ANTHONY McCLEAF,                         :
                                         :
              Petitioner,                :
                                         :
     v.                                  :    Civ. Act. No. 04-1296-JJF
                                         :
THOMAS L. CARROLL,   Warden,             :
                                         :
              Respondent.                :                ,

---

Anthony McCleaf.  _Pro se_ Petitioner.

Thomas E. Brown, Deputy Attorney General of the DELAWARE
DEPARTMENT OF JUSTICE, Wilmington, Delaware.  Attorney for
Respondent.

---

**MEMORANDUM OPINION**

February 28, 2006
Wilmington, Delaware

**Farnan, Judge**

Pending before the Court is an Application For A Writ Of
Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by
Petitioner Anthony McCleaf.  (D.I. 1.)  For the reasons
discussed, the Court will dismiss the Petition and deny the
relief requested.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In October 1999, Petitioner stole nine pairs of men's jeans
from the Strawbridge's department store located in the Dover
Mall.  After reviewing the store surveillance videotape, Dover
Police Officer Scott Sealund arrested Petitioner.  Officer
Sealund asked Petitioner for his name and identification.
Petitioner responded that he did not have any identification and
his name was Anthony R. Miller.

Officer Sealund transported Petitioner to the Dover Police
Department.  While filling out Petitioner's arrest card, Officer
Sealund warned Petitioner that he could be charged with criminal
impersonation and second degree forgery if the information he
provided was incorrect.  Nevertheless, Petitioner signed the
arrest card in the name of Anthony R. Miller.  Petitioner also
provided the police with an incorrect date and place of birth,
and a false Social Security number.

After fingerprinting Petitioner, Officer Sealund discovered
that Petitioner's name was not Anthony R. Miller.  Officer

1

Sealund then advised Petitioner that he was under arrest for criminal impersonation and second degree forgery.  Petitioner provided a different birthdate, Social Security number, place of birth and tattoo description for his second arrest card. Petitioner also admitted that Anthony R. Miller was his brother's name.

Following a February 2000 bench trial in the Delaware Superior Court, Petitioner was found guilty of second degree forgery, shoplifting, and criminal impersonation.  Petitioner was sentenced as a habitual offender to ten years imprisonment for the forgery conviction and thirty days imprisonment for his conviction on the remaining charges.  Petitioner was also sentenced to probation following his incarceration.

Through his counsel, Petitioner filed a timely notice of appeal.  While his appeal was pending, Petitioner filed an affidavit with the Delaware Supreme Court indicating that he wanted to discharge his attorney.  The Delaware Supreme Court remanded the matter to the Delaware Superior Court to determine if Petitioner wished to proceed pro se on appeal.  When the Delaware Superior Court conducted a hearing on the representation issue, Petitioner stated that he had changed his mind and did not wish to proceed pro se.  Petitioner proceeded on appeal with counsel, and the Delaware Supreme Court affirmed his conviction and sentence.

2

In March 2002, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") in the Delaware Superior Court.  The Delaware Superior Court denied the motion, and Petitioner appealed.  The State filed a motion to affirm, and the Delaware Supreme Court granted the State's motion on all but one issue, Petitioner's claim that the sentence imposed for second degree forgery violated the Eighth Amendment.  The Delaware Supreme Court appointed counsel to represent Petitioner for the limited purpose of briefing the Eighth Amendment issue.  McCleaf v. State, No.684,2002, Order (Del. July 29, 2003).  After briefing, the Delaware Supreme Court rejected Petitioner's Eighth Amendment claim and affirmed the Delaware Superior Court's denial of Petitioner's Rule 61 motion.  McCleaf v. State, 842 A.2d 1244 (Table), 2004 WL 344423 (Del. Feb. 5, 2004).

## II.  GOVERNING LEGAL PRINCIPLES

A district court can entertain a state prisoner's application for federal habeas relief only on the ground that his custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Absent exceptional circumstances, a federal court cannot review a habeas petition on the merits unless the petitioner has exhausted his remedies under state law.  28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275

3

(1971).  A petitioner satisfies the exhaustion requirement by presenting his claim to the state's highest court, either on direct appeal or in a post-conviction proceeding.  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999);  See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

If the state's highest court adjudicates a federal habeas claim on the merits, then a federal court must review the claim under the standard contained in 28 U.S.C. § 2254(d).  Section 2254(d)(1) only permits federal habeas relief if the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision is an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2); Williams v. Taylor, 529 U.S. 362, 412 (2000);  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).  When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct.  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to both explicit and implicit findings of fact,  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000), and is only rebutted by clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1);  Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the

unreasonable application standard of § 2254(d)(2) applies to factual decisions).

If a petitioner fairly presents a habeas claim to the state's highest court, but the state court refuses to consider the claim because the petitioner failed to comply with an independent and adequate state procedural rule, the claim is deemed exhausted but procedurally defaulted.  Harris v. Reed, 489 U.S. 255, 263 (1989); Werts, 228 F.3d at 192.  A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51.; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992); Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 496.

## III. DISCUSSION

Petitioner presents five grounds for federal habeas relief:[1]
(1) the sentence imposed under the habitual offender statute
violates due process, equal protection, and the Eight Amendment;
(2) his counsel was constitutionally ineffective during the
trial, on appeal, and on post-conviction appeal; (3) the Superior
Court violated his right to self-representation during the post-
conviction proceedings; (4) there was insufficient evidence to
support the conviction for second degree forgery; and (5) his
conviction was based on a police officer's false testimony.
(D.I. 1; D.I. 12.)

   A.   The Constitutionality Of Petitioner's Sentence Under
        The Habitual Offender Statute

   After Petitioner's conviction for misdemeanor shoplifting,
criminal impersonation, and second degree forgery, the State
moved to have him sentenced as an habitual offender.  Following a
hearing, the Superior Court concluded that habitual offender
status was warranted due to Petitioner's six prior qualifying
felony convictions.[2]  See Del. C. Ann. tit. 11, § 4214(a);

---

[1]   The Petition presents seven grounds for relief;
however, the Court has combined certain repetitive claims,
thereby reducing the number of claims to five.

[2]   The six qualifying felonies were: (1) second degree
conspiracy in 1999; (2) felony theft in 1986; (3) first degree
unlawful imprisonment in 1998; (4) a New Jersey burglary
conviction in 1991; (5) a Florida conviction for the sale of
marijuana in 1982; and (6) a Florida conviction for grand theft
in 1983.  State v. McCleaf, K99-0372 through 0374, Commr.'s Rep.

6

Bailey v. State, 450 A.2d 400, 404 (Del. 1982).  Petitioner was
sentenced to ten years imprisonment as an habitual offender, even
though second degree forgery is a Class G non-violent felony with
a maximum prison sentence of two years.  11 Del. C. Ann. §§
861(b)(2)(b), 4205(b)(7); Crosby v. State, 824 A.2d 894, 896-97
(Del. 2003).

> 1.    Whether Petitioner's sentence under the habitual
>       offender statute violated his Constitutional
>       rights to Due Process and Equal Protection

Petitioner contends that the Superior Court violated his due
process rights by failing to notify him that he might be subject
to habitual offender status and by arbitrarily imposing a ten
year sentence.[3]  Although Petitioner presented this claim to the
Delaware Supreme Court on post-conviction appeal, the court did
not adjudicate the claim on the merits.  See Holloway v. Horn,
355 F.3d 707, 718-19 (3d Cir. 2004) (a state court opinion which
does not even mention a federal constitutional claim does not
constitute an adjudication on the merits) (citing Smith v.
Digmon, 434 U.S. 332, 333 (1978)).  Therefore, the pre-AEDPA
standard of review applies, and the court will review the claim

---

and Rec., (Del. Super. Ct. July 30, 2002).

[3]    To the extent Petitioner contends his sentence violates
Delaware's sentencing guidelines, or that the Superior Court
misapplied Delaware's habitual offender statute, he has presented
a state law issue that is not cognizable on federal habeas
review.  See Estelle v. McGuire, 502 U.S. 62, 67 (1991).

de novo.   See Holloway, 355 F.3d at 718-19.

In Oyler v. Boles, 368 U.S. 448, 503-04 (1962), the United States Supreme Court held that "due process does not require advance notice that the trial on the substantive offense will be followed by an habitual offender proceeding" if a state chooses to determine a defendant's habitual offender status in a proceeding separate from the criminal trial.  Where a separate hearing is held to determine a defendant's habitual offender status, due process is satisfied so long as the defendant receives reasonable notice of the habitual offender hearing and an opportunity to be heard with respect to the habitual offender charge.  Id.

In Petitioner's case, a separate hearing was held to determine his habitual offender status, and Petitioner does not allege that he received insufficient notice of the habitual offender hearing after the State filed its motion under § 4215(b).  Accordingly, the Court concludes that Petitioner is not entitled to federal habeas relief on his claim.

As for Petitioner's claim that his ten year sentence was arbitrary and capricious because other defendants have been sentenced to significantly shorter periods of incarceration, the Court likewise concludes that Petitioner is not entitled to relief.  It is well-settled that an equal protection challenge to a sentence imposed pursuant to a recidivist statute will only

8

succeed if the alleged sentencing disparities are due to race, religion, or some other arbitrary classification.  Oyler, 368 U.S. at 455-56.  The fact that some conscious selectivity exists in the enforcement of a recidivist sentencing statute does not, on its own, constitute a federal constitutional violation.  Id.

In this case, Petitioner provides statistics for three other people who received lower sentences than he did; however, Petitioner does not allege, and the record does not indicate, that the different sentences were due to race, religion, or some other arbitrary classification.  Accordingly, the Court concludes that Petitioner has failed to establish that his sentence violates equal protection.

    2.    Whether Petitioner's sentence under the habitual
          offender statute violates the Eighth Amendment

Petitioner next contends that his ten year sentence violates the Eighth Amendment because it is grossly disproportionate to the applicable maximum two year sentence for a second degree forgery conviction.  Because the Delaware Supreme Court denied Petitioner's claim on the merits[4], the Court must review the claim under § 2254(d)(1) to determine if the Delaware Supreme Court's decision was contrary to, or involved an unreasonable application of, United States Supreme Court precedent.

_____

    [4]    See McCleaf, 2004 WL 344423, at *1-2.

9

Recidivist sentences only violate the Eight Amendment's prohibition against cruel and unusual punishment in those extremely rare and extraordinary cases where the threshold comparison between "the crime committed and the sentence imposed leads to an inference of gross disproportionality." Ewing v. California, 538 U.S. 11, 30 (2003); Lockyer v. Andrade, 538 U.S. 63, 72 (2003); Ewing v. California, 538 U.S. 11 (2003). Although the Supreme Court has not identified clear factors for determining "gross disproportionality,"[5] it has identified four principles to be considered when conducting a proportionality review: "the primacy of the legislature, the variety of legitimate penalogical schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors." Ewing, 538 U.S. at 23 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)).

Applying these principles, the Delaware state courts have devised a two-step analysis for determining whether a sentence imposed under the habitual offender statute violates the Eighth Amendment. See Crosby v. State, 824 A.2d 894 (Del. 2003). First, the state court compares the sentence imposed to the crime committed, and then, if this comparison leads to an inference of gross disproportionality, the court compares the defendant's

---

[5]    Lockyer, 538 U.S. at 72 (noting that "[o]ur cases exhibit a lack of clarity regarding what factors may indicate gross proportionality").

sentence with similar cases.  Id. at 906-07.  In Petitioner's
case, the Delaware Supreme Court concluded that there was no
inference of disproportionality, and therefore, did not reach the
second step of comparing Petitioner's sentence to other cases.
In determining that there was no inference of gross
disproportionality, the Delaware Supreme Court relied on the
principles established by the United States Supreme Court in
Rummel v. Estelle, 445 U.S. 263 (1980), and considered
"Delaware's legitimate public-safety interest in punishing and
deterring habitual offenders, the sentencing judge's discretion
to sentence within the maximum statutory range applicable to
habitual offenders, and [Petitioner's] actual sentence relative
to the maximum sentence available under the statute."  McCleaf,
842 A.2d at *2.

    Reviewing the decision of the Delaware Supreme Court in
light of the applicable legal principles, the Court concludes
that the Delaware Supreme Court's decision was not contrary to or
an unreasonable application of Supreme Court precedent.  The
Delaware Supreme Court's reliance on Rummel was consistent with
the Supreme Court's pronouncements in both Lockyer and Ewing.
See Lockyer, 538 U.S. at 74 (stating that "Harmelin allows a
state court to reasonably rely on Rummel in determining whether a
sentence is grossly disproportionate."); see Ewing, 538 U.S. at
25 (noting that the United States Supreme Court has consistently

recognized recidivism as legitimate basis for increased punishment).

In addition, the Court concludes that the Delaware Supreme Court did not unreasonably apply Supreme Court precedent to determine that Petitioner's case was not so extraordinary or extreme as to satisfy the threshold inference of "gross proportionality" needed to establish an Eighth Amendment violation. See Lockyer, 538 U.S. at 77. For example, in Lockyer, the Supreme Court held that a recidivist's minimum sentence of fifty years was not grossly disproportionate to the two counts of petty theft offenses that triggered the application of the recidivist statute. Lockyer, 538 U.S. at 67, 77. Similarly, in Ewing, the Supreme Court rejected an Eighth Amendment challenge after determining that the defendant's sentence of twenty-five years to life for stealing three golf clubs was not "grossly disproportionate" to the crime. Ewing, 538 U.S. at 21-23. Finally, in Rummel v. Estelle, 445 U.S. 263 (1980), the Supreme Court held that a recidivist's life sentence, with the possibility of parole, did not constitute cruel and unusual punishment even though the sentencing range for the triggering offense, obtaining $120.17 by false pretenses, was two to ten years imprisonment. In this case, Petitioner had six prior felony convictions, and given the Supreme Court's decisions in Lockyer, Rummel and Ewing, the Court cannot conclude that the

Delaware Supreme Court erred in concluding that Petitioner's sentence did not create an inference of gross disproportionality. Accordingly, the Court concludes that the Petitioner is not entitled to relief under § 2254(d)(1).

B.   Ineffective Assistance Of Counsel

Petitioner next contends that counsel provided constitutionally ineffective assistance during the trial, on direct appeal, and on post-conviction appeal.  At the outset, the Court will dismiss Petitioner's ineffective assistance of counsel claim regarding his post-conviction appeal because it fails to provide a basis for federal habeas relief.  See Coleman v. Thompson, 501 U.S. 722, 725 (1991) (stating that "[b]ecause there is no constitutional right to an attorney in state postconviction proceedings, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings").

However, Petitioner's claims for ineffective assistance of counsel during his trial and on direct appeal are cognizable on federal habeas review.  See Strickland v. Washington, 466 U.S. 668 (1984).  Petitioner presented these claims to the Delaware Supreme Court in his post-conviction appeal, and the Delaware Supreme Court denied the claims on the merits.  Therefore, the Court will review the claims under § 2254(d)(1) to determine if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, Supreme Court precedent.

13

To prevail on his ineffective assistance of counsel claims, Petitioner must satisfy the two-pronged standard enunciated by the United States Supreme Court in <u>Strickland v. Washington</u>, and demonstrate that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) counsel's deficient performance prejudiced the petitioner's defense; in other words, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 687-88, 692-94; <u>See</u> <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003).  Petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.  <u>See</u> <u>Wells v. Petsock</u>, 941 F.2d 253, 259-260; <u>Dooley</u>, 816 F.2d at 891-92.  Although not insurmountable, the <u>Strickland</u> standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."  <u>Strickland</u>, 466 U.S. at 689.

      1.   Whether Petitioner's trial counsel was constitutionally ineffective

Petitioner contends that defense counsel did not adequately prepare, investigate, or research his case, as evidenced by counsel's failure to discover and argue that: (1) the indictment for second degree forgery did not contain a signature from the grand jury foreman; (2) the term "execute" as included in the forgery statute means more than merely "signing" an instrument, therefore, the fact that Petitioner signed the arrest card does

not constitute second degree forgery; and (3) Officer Sealund committed perjury by testifying that it took him one and half hours to find out Petitioner's true identity because it actually took a shorter amount of time.[6]  (D.I. 11, State's Motion to Affirm in <u>McCleaf v. State</u>, No.684,2002, at Exh. F.)  The Delaware Superior Court analyzed and denied Petitioner's ineffective assistance of counsel claim under <u>Strickland</u>, and the Delaware Supreme Court affirmed the decision concluding that trial counsel was not ineffective for failing to raise these issues because they were meritless.

The Court has reviewed the record, and concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, <u>Strickland</u>.  With regard to Petitioner's claim that his indictment was defective for lack of signature, the United States Supreme Court has held that "[t]he absence of the foreman's signature on an indictment is a technical irregularity that is not necessarily fatal to the indictment."  <u>Hobby v. U.S.</u>, 468 U.S. 339, 345 (1984).  The Delaware state courts follow this rule.  <u>See</u> <u>State v. Abbott</u>, 63

---

[6]     Petitioner's Answer does not identify any specific errors of counsel; however, in his Reply to the State's Answer, Petitioner asks the Court to look at his Rule 61 Memorandum and post-conviction appellate briefs for more information on his claims.  Although the Court will undertake this review for purposes of the instant Petition, the Court hereby provides Petitioner notice that, in the future, reference to prior state court filings will not be entertained.

A. 231 (Del. 1905).  It is also well-settled that convictions are not "reversed for minor and technical deficiencies [in the indictment] which did not prejudice the accused."  <u>Russell v. United States</u>, 369 U.S. 749, 763 (1962).  Rather, the sufficiency of an indictment is measured by two criteria: "first, whether [it] contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."  <u>Id.</u> at 763-64 (internal citations omitted).

In Petitioner's case, although the Indictment for second degree forgery is not signed by the Grand Jury foreperson,[7] the Indictment specifically identifies the charge as second degree forgery, cites the applicable section of the Delaware Code (Del. Code Ann. tit. 11, § 861), recites the elements of the crime, and identifies the type of written instrument involved (an arrest card).  In these circumstances, the Court concludes that Petitioner had sufficient notice of the charges against him, and

---

[7]     The Superior Court denied this claim as meritless because the Indictment was signed by a member of the Grand Jury and the language of the indictment recited the elements for second degree forgery.  The record contains three separate Indictments, and the second degree forgery Indictment does not contain a signature by any member of the Grand Jury.

the Indictment was sufficient to enable Petitioner to plead an acquittal or conviction in order to bar future prosecutions for the same offense.  Accordingly, the Court concludes that the Delaware Supreme Court reasonably determined that Petitioner was not prejudiced due to trial counsel's failure to raise the absence of the Grand Jury foreperson's signature on the Indictment.

Petitioner's second allegation of ineffective assistance of counsel is premised on his argument that the definition of the term "execute" as contained in Delaware's forgery statute is not equivalent to the term "sign" as used in Petitioner's indictment for second degree forgery.  Petitioner contends that the word "execute," when applied to a written instrument, means the performance of all acts that may be necessary to validate it.  According to Petitioner, the arrest card would have been valid even without a signature, and therefore, the act of signing the card was not synonymous with the act of executing a written instrument as contemplated by the forgery statute.  Consequently, Petitioner contends that counsel's failure to argue this distinction constituted ineffective assistance.

It is well-established that an attorney does not provide ineffective assistance by failing to raise improper or meritless claims.  See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).  Based on the record before it, the Court concludes that the

17

Delaware Supreme Court did not err in concluding that this claim
was meritless and that counsel was not ineffective for failing to
raise it.  Regardless of whether an arrest card has to be signed
to be valid, Petitioner admits that he signed the card using
another person's name.  Given that the definition of "execute" is
"[t]o make valid or legal, as by signing," the Court concludes
that Petitioner did indeed execute the arrest card by signing it.
See The American Heritage Dictionary (4th ed. 2001).  Second, the
offense of forgery is established if the person committing the
forgery has the intent to deceive.  In Petitioner's case, the
Court concludes that sufficient evidence was introduced at trial
to demonstrate his intent to deceive.  During the same time-frame
in which Petitioner signed the arrest card, Petitioner gave the
police a false Social Security number, birthdate, name, and
scar/tattoo information.  Accordingly, the Court concludes that
the Delaware courts did not unreasonably apply Strickland to
determining that trial counsel was not ineffective for failing to
raise a meritless claim.  See Werts v. Vaughn, 228 F.3d 178, 203
(3d Cir. 2000).

     Finally, Petitioner contends that Officer Sealund discovered
Petitioner's true identity faster than the one-and-a-half-hour
time period to which he testified, and that trial counsel was
ineffective for failing to inform the Delaware Superior Court of
this discrepancy.  The Delaware Superior Court rejected this

argument, stating that this "collateral factual issue . . . was not determinative as to the defendant's guilt . . . [and] assuming for argument's sake that Officer Sealund's statement about the time frame was erroneous . . . does not change the basic fact that [Petitioner] signed the arrest card with a false name and other false pedigree." McCleaf, ID No. 991005729, Rep. & Rec. July 30, 2002.  The Court agrees with the Delaware Superior Court's rationale for rejecting this claim, and the Court concludes that the Delaware Supreme Court reasonably applied Strickland to affirm the Superior Court's decision. Accordingly, the Court concludes that Petitioner is not entitled to relief on his claim that his trial counsel was constitutionally ineffective.

>    2.   Whether Petitioner's appellate counsel was
>         constitutionally ineffective

Petitioner also contends that his appellate counsel was constitutionally ineffective for failing to incorporate the following additional arguments in the appellate brief that he and counsel agreed were to be included: (1) the word "execute" as contained in the forgery statute does not mean "sign"; (2) that Officer Sealund committed perjury; and (3) that the documents the state used to declare Petitioner an habitual offender were insufficient.  See (D.I. 11, State's Mot. to Affirm in McCleaf v. State, No. 684,2002, at Exh. F, p. 13.)  Petitioner also contends that appellate counsel was ineffective because he included in the

19

appellate brief two issues regarding the shoplifting charge that Petitioner specifically asked him to exclude from the brief.  Id.

Although the United States Supreme Court formulated the Strickland standard in response to a claim regarding trial counsel's ineffective assistance, it applies as well to claims of ineffective assistance involving appellate counsel.  See Henderson v. Hendricks, 2005 WL 3406434, at *16 (D. N.J. Dec. 13, 2005).  To demonstrate that appellate counsel acted objectively unreasonable in failing to raise a particular issue on direct appeal, the petitioner must show that the issue not raised on appeal "was clearly stronger than issues that counsel did present."  Smith v. Robbins, 528 U.S. 259, 287-88 (2000).  A petitioner satisfies Strickland's prejudice prong by demonstrating a reasonable probability that he would have prevailed on appeal if the issue had been presented.

As previously explained, Petitioner's underlying contentions regarding Officer Sealund's alleged perjury and the distinction between "execute" and "sign" are meritless.  Accordingly, the Court concludes that Petitioner's appellate counsel did not provide ineffective assistance by failing to argue these claims on direct appeal.

With respect to Petitioner's contention that the State provided insufficient documentation to justify his classification as an habitual offender, the Court is required to accept the

state court's factual determination that habitual offender status was appropriate absent a showing of clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e). Petitioner has failed to provide any documentation to rebut this presumption. Thus, the Court concludes that the Delaware Supreme Court reasonably determined that appellate counsel did not provide ineffective assistance by failing to present this meritless argument on direct appeal.

As for Petitioner's claim regarding the selection of issues to be included in his appellate brief, the Supreme Court has concluded appellate counsel may select the issues to be presented on appeal in order to maximize the chance of success on appeal. Jones v. Barnes, 463 U.S. 745 (1983). Petitioner has failed to demonstrate that the inclusion of the shoplifting issues in his appellate brief decreased his chance of success on appeal. Accordingly, the Court concludes that the Delaware Supreme Court reasonably applied Strickland to deny Petitioner's claim that his appellate counsel was ineffective, and therefore, Petitioner is not entitled to federal habeas relief on this claim.

C. Violation Of Petitioner's Right To Self-Representation During His State Post-Conviction Proceeding

Petitioner contends that the Delaware Superior Court appointed counsel to represent him during the Rule 61 proceeding against his wishes. (D.I. 12, at ¶ 2.) However, there is no federal or constitutional right to self-representation in a

21

direct appeal from a criminal proceeding, and thus, by logical extension, there is also no right to self-representation during a collateral proceeding.  See Martinez v. Court of Appeal, 528 U.S. 152 (2000).  Accordingly, the Court concludes that Petitioner is not entitled to federal habeas relief on this claim.

D.   Insufficient Evidence To Support Petitioner's Conviction For Second Degree Forgery

Petitioner next contends that there was insufficient evidence to support his conviction for second degree forgery. Specifically, Petitioner argues that he signed the arrest card with an alias, Anthony R. Miller, that he often used interchangeably with his given name, Anthony McCleaf, thereby demonstrating that he did not have the requisite intent to deceive the police.  Petitioner also contends that the arrest card did not require a signature to be valid, and therefore, the fact that he signed it with an alias did not constitute forgery. On direct appeal, the Delaware Supreme Court denied this claim as meritless.  Accordingly, federal habeas relief will only be warranted if that denial was contrary to, or an unreasonable application of, clearly settled federal law.

The United States Supreme Court precedent governing Petitioner's insufficient evidence claim is Jackson v. Virginia, 443 U.S. 307 (1979).  Pursuant to Jackson, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

22

have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  A court must apply Jackson's standard with explicit reference to the substantive elements of the criminal offense as defined by state law. Id. at 324 n.16; Jordan v. Snyder, 2000 WL 52152, at *4 (D. Del. Jan. 5, 2000). Further, a reviewing court must defer to the trier of fact in resolving any conflicts in the evidence. Jackson, 443 U.S at 325.

     In addressing this claim, both the Delaware Superior Court and the Delaware Supreme Court properly set forth the elements for second degree forgery, stating that "[a] person is guilty of second degree forgery when, intending to defraud, deceive, or injure another person, the person . . . (2) . . . executes . . . any written instrument which purports to be the act of another person, whether real or fictitious" and the written instrument is a public record or a document issued or created by a public office or a governmental instrumentality.  Del. Code Ann. tit. 11 § 861(a)(2) & (b)(2)c.  Both courts then implicitly found that the arrest card constitutes a written instrument for purposes of a second degree forgery conviction, and the Court concludes that this finding is supported by Delaware statutory law and case law. See Del. C. Ann. tit. 11 § 861(b)(2)c;  see, e.g., State v. Smallwood, 1999 WL 169335 (Del. Super. Mar. 16, 1999)(arrest card);  cf. Fawcett v. State, 697 A.2d 385, 387 (Del.

1997)(fingerprint card).

Additionally, the Delaware Supreme Court concluded that the evidence presented at Petitioner's trial supported the trial judge's conclusion that Petitioner had the requisite intent to deceive or defraud the police about his true identity.  During Petitioner's bench trial, the judge noted that Strawbridge's possessed information regarding a prior incident involving Petitioner, in which he was identified as Anthony C. McCleaf. State v. McCleaf, ID No. 9910005729, Mem. of Dec. at ¶ 3 (Del. Super. Ct. Feb. 28, 2000).  However, when taken into custody by the Strawbridge's loss prevention officer for this instance of shoplifting, Petitioner identified himself as Anthony R. Miller. Petitioner continued to represent himself as Anthony R. Miller when taken into police custody, and he also gave the police a false date of birth, a false Social Security number, and false identifying scars for "Anthony Miller" when filling out the first arrest card.

During his bench trial, Petitioner argued that he was legally entitled to use the name "Anthony Robin Miller" because his father's name is Charles Miller, Sr.  He contended that he had adopted the name "Anthony Miller" as an alias and, because he used the names interchangeably, he did not have the requisite intent to deceive the police.  State v. McCleaf, ID No. 9910005729, Mem. of Dec. at ¶ 3 (Del. Super. Ct. Feb. 28, 2000).

The trial judge rejected this argument, finding that:

> While Anthony R. Miller was an alias which the
> defendant had used previously, and the name Miller was
> derived from his father, I find nonetheless that
> Anthony R. Miller was a fictitious name which the
> defendant used in an effort to defraud the officer
> about his true identity, Anthony C. McCleaf.  It is
> also noted that Anthony R. Miller who the defendant
> presented to the officer had a fictitious, or
> different, date of birth, place of birth and social
> security number, different employment information, and
> different scar/tattoo information.  I am satisfied that
> the defendant endeavored to present a second person,
> different than himself, in connection with the first
> arrest card.  I find that all of the elements of
> forgery in the second degree have been established.

State v. McCleaf, ID No. 9910005729, Mem. of Dec. at ¶ 3 (Del.
Super. Ct. Feb. 28, 2000).

On appeal, the Delaware Supreme Court noted that the trial
judge did not accept Petitioner's testimony, and found that the
record supported the trial judge's conclusion that Petitioner
intended to deceive the authorities as to his identity.  The
Court has reviewed the evidence presented during Petitioner's
bench trial, and finds that the Delaware Supreme Court's
conclusion was neither contrary to, nor an unreasonable
application of, Jackson.  Even if Petitioner had adopted the
alias of "Anthony Miller" and interchangeably used the names
"Anthony Miller" and "Anthony McCleaf," Petitioner never told
Officer Sealund that he used an alias.  Of special significance
is the fact that Petitioner never mentioned the existence of his
alias despite Officer Sealund's warning that signing the arrest

card with a fabricated name would result in a charge of forgery. Accordingly, the Court will deny Petitioner's insufficient evidence claim for failing to satisfy § 2254(d)(1).

    E. <u>Officer Sealund's Alleged Perjury</u>

    In his final claim, Petitioner contends that Officer Sealund committed perjury by misrepresenting the amount of time it took him to discover Petitioner's true identity. Petitioner presented his perjury claim to the Delaware Supreme Court in his post-conviction appeal. The Delaware Supreme Court denied the claim as procedurally defaulted under Rule 61(i)(3) because Petitioner failed to raise the claim in his direct appeal. This Court has consistently held that Rule 61 constitutes an independent and adequate state procedural ground precluding federal habeas review absent a showing of cause for, and prejudice resulting from, the procedural default. <u>Maxion v. Snyder</u>, 2001 WL 848601, at *10 (D. Del. July 27, 2001). Consequently, the Court can only review the merits of the instant claim if Petitioner demonstrates cause and prejudice.

    To demonstrate cause for a procedural default, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, Petitioner must show "not merely that the errors at . . . trial created a possibility of

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

To the extent Petitioner asserts ineffective assistance as cause for procedurally defaulting the instant claim, the Court concludes Petitioner has not established cause.  For the reasons discussed previously, the Court concludes that neither defense counsel nor appellate counsel were ineffective for failing to argue this meritless claim.  See Coleman, 501 U.S. at 745 (holding that ineffective assistance of counsel may constitute cause for a procedural default only if counsel's deficiencies rise to the level of an independent Sixth Amendment violation); Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000);  Murray v. Carrier, 477 U.S. 478, 488-89 (an allegation of constitutionally ineffective assistance of counsel as cause for a procedural default in state court must itself be independently exhausted). Petitioner does not allege, and the record does not indicate, any other cause to excuse Petitioner's procedural default.

In the absence of cause, the Court need not address prejudice.  Further, Petitioner has not presented any colorable evidence of his actual innocence, and therefore, the Court concludes that the miscarriage of justice exception does not excuse Petitioner's default.  Accordingly, the Court will deny Petitioner's claim as procedurally barred.

## IV.   CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  <u>Id.</u>

The Court has concluded that the Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 does not warrant relief under § 2254(d)(1).  The Court is persuaded that reasonable jurists would not find this conclusion to be debatable, and therefore, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.